# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

**Cecilia Herbert**                                                                                    **Plaintiff**

**v.**                                      **CASE NO. 4:13CV00049 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                      **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Cecilia Herbert seeks judicial review of the denial of her application for disability insurance benefits (DIB). Herbert last worked in August of 2006, as a unit secretary at Arkansas Children's Hospital.[1] She previously applied for disability benefits, and that application was denied at the reconsideration level on November 2, 2007.[2] Herbert reapplied on October 19, 2010,[3] with an alleged onset date of August 5, 2006.[4] Herbert's date last insured is December 31, 2007.[5] Therefore, Herbert must establish a disability on or before December 31, 2007, to receive DIB. Herbert bases disability on degenerative disc disease, dislocated disc in neck and spine, uncontrolled hypertension, bursitis in right shoulder, frozen shoulder on right side, anxiety and

---

[1] SSA record at p. 133.

[2] *Id.* at p. 112.

[3] *Id.* at p. 98.

[4] *Id.*

[5] *Id.* at p. 112.

depression.[6] [7]

**The Commissioner's decision.** The Commissioner's ALJ determined that Herbert did not engage in substantial gainful activity during the period from the alleged onset date to the date last insured.[8] Herbert has severe impairments - disorders of the back (cervical spine) and chronic right shoulder pain.[9] Neither of Herbert's severe impairments meet the listings, and Herbert can perform light work except with frequent climbing of stairs, occasionally climbing ladders, and frequently balancing, kneeling, stooping, crouching and crawling, with use of either arm occasionally for overhead reaching.[10] The vocational expert testified that Herbert's previous position as a unit secretary meets the requirements of light work with the limitations established by the ALJ.[11] The ALJ held that Herbert can perform past relevant work as a unit secretary and denied Herbert's application.[12]

After the Commissioner's Appeals Council denied a request for review, the ALJ's

---

[6]*Id*. at p. 123.

[7]Although the ALJ did not address the issue of reopening Herbert's previous application, the Commissioner considered the merits of the previous application. Therefore, Herbert's previous application was reopened. *Yeazel v. Apfel*, 148 F.3d 910, 912 (8th Cir. 1998) ("When the Commissioner reconsiders an application on the merits we deem that application to be reopened and thus subject to judicial review.).

[8]SSA record at p. 10.

[9]*Id*.

[10]*Id*. at pp. 10-11.

[11]*Id*. at p. 15.

[12]*Id*. at pp. 15-16.

decision became a final decision for judicial review.[13] Herbert filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14]

**Herbert's allegations.** Herbert maintains that there is not substantial evidence to support the ALJ's RFC determination because (1) the ALJ erroneously interpreted the objective medical records as failing to support Herbert's subjective complaints of pain; (2) the ALJ erred in assigning great weight to the opinions of the state agency doctors; and (3) the ALJ erred in the credibility determination. These arguments are not persuasive. The ALJ's RFC determination is supported by substantial evidence, and, accordingly, the ALJ appropriately denied Herbert's application.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[15] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Herbert can perform light work with the limitations assessed by the ALJ.[16]

---

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[16]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

**Objective medical evidence.** Herbert asserts that the ALJ misinterpreted and mischaracterized the objective medical evidence in determining that the medical records do not support Herbert's subjective complaints of pain. Specifically, Herbert argues that the ALJ ignored statements in the treating physician's treatment notes concerning the pain Herbert experienced and the impact this had on Herbert's ability to return to work. Further, Herbert alleges that the ALJ's interpretation of Herbert's x-ray and MRIs is wrong.

The ALJ held that the medical evidence does not support Herbert's allegations of total disability before the date last insured.[17] Reviewing the objective medical evidence, the ALJ determined that the treating physician's treatment notes prior to the date last insured did not place any limitations on Herbert, and the September 20, 2006, treatment note did not prohibit Herbert from returning to work.[18] The ALJ held that the August 6, 2006, cervical spine x-ray was normal and the August 30, 2006, cervical spine, thoracic spine and right shoulder MRIs were within normal limits.[19]

A reasonable mind would accept the evidence as adequate to support the determination that the medical records do not support Herbert's subjective complaints of pain. The record contains five (5) treatment notes from Herbert's treating physician prior to the date last insured.[20] In each note, the treating physician states that Herbert is in pain.[21] Herbert's pain level ranges

---

[17]SSA record at p. 14.

[18]*Id*. at p. 15.

[19]*Id*.

[20]*Id*. at pp. 189-191 & 410-417.

[21]*Id*.

from five (5) to ten (10).[22] The treating physician also makes note of pursued treatments and their effectiveness.[23] On October 25, 2006, the treating physician noted that trigger point injections "really helped [Herbert] a lot, but now the pain is coming back again."[24] Herbert's pain level on that date was six (6).[25] In December of 2006, the treating physician determined that the medial branch blocks performed in October of 2006 "helped [Herbert] overall quite a bit."[26] Herbert's pain level on that date was five (5).[27] The February 14, 2007, treatment note reports that although a trigger point injection did not provide much relief, Herbert's pain level on that day was five (5).[28] Two treatment notes place Herbert's pain level at a nine (9) or ten (10).[29] One of those notes is on the day Herbert first met with her treating physician, September 20, 2006,[30] and the other followed an unsuccessful cervical epidural injection in January of 2007.[31]

Each note contains the same impression: myofascial pain syndrome, whiplash cervical injury, cervical spondylosis with facet arthropathies.[32] Myofascial syndrome is defined as

---

[22]*Id.*

[23]*Id.*

[24]*Id.* at p. 416.

[25]*Id.*

[26]*Id.* at p. 414.

[27]*Id.*

[28]*Id.* at p. 410.

[29]*Id.* at pp. 189 & 412.

[30]*Id.* at p. 189.

[31]*Id.* at p. 412.

[32]*Id.* at pp. 189-191 & 410-417.

"irritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)."[33] Whiplash cervical injury, also called a flexion-extension injury, is the result of a "forceful application of a forward and backward movement of the unsupported head."[34] Whiplash "can usually be cured in one week to three months after injury occurs."[35] Cervical spondylosis is "common" and "age-related."[36] As people age, the vertebral disks shrink, thus prompting the vertebrae to form osteophytes, or bone spurs, to stabilize the back bone.[37] "Osteophyte formation and other changes do not necessarily lead to symptoms, but after age 50, half of the population experiences occasional neck pain and stiffness."[38] Arthropathy is "any disease of a joint or of joints. . . ."[39] It can be compared to arthritis,[40] an "inflamation of a joint or joints."[41]

None of the notes specifically limit Herbert from performing certain activities or from working. There are, however, as Herbert points out, statements concerning Herbert's anticipated return to work. In the October 25, 2006, note, the treating physician states that, "we plan to

---

[33] 4-M Attorneys' Dictionary of Medicine M-77832

[34] Stedman's Med. Dictionary 204120 (27th ed.).

[35] Maureen Haggerty, 6 The Gale Encyclopedia of Med. 4655 (4th ed.).

[36] Julia Barrett, 2 The Gale Encyclopedia of Med. 922 (4th ed.).

[37] *Id.* at 923.

[38] *Id.*

[39] 1-A Attorneys' Dictionary of Medicine A-11164.

[40] *Id.*

[41] 1-A Attorneys' Dictionary of Medicine A-11096.

release [Herbert] back to work down the road, but she needs to be much more pain free than the current levels."[42] The January 4, 2007, note contains the statement, "[Herbert] would like to go back to work, but the pain continues."[43] The ALJ correctly states, however, that nothing in the September 20, 2006, treatment note prohibits Herbert from returning to work.

The August 6, 2006, x-ray of Herbert's cervical spine showed that "the prevertebral soft tissues are within normal limits; anterior longitudinal line, posterior longitudinal line and spinal laminar lines are well maintained."[44] The August 30, 2006, MRI of Herbert's thoracic spine was "normal."[45] Herbert's cervical spine MRI and right shoulder MRI establish that while there are issues of disc displacement, narrowing and impingement, Herbert's condition is not acute. Herbert's cervical spine MRI presents evidence of some disc displacement and narrowing, but also notes that there is no clinically evident cord compression, high grade focal disc protrusions or critical canal stenosis.[46] The MRI impression was "mid cervical spondyloarthropathic changes with shallow central to leftward disc displacement and asymmetric left foraminal narrowing with no high-grade focal disc protrusions, critical canal stenosis or cord compression and no markedly asymmetric rightward pathology."[47] The right shoulder MRI also found evidence of narrowing in

---

[42]SSA record at p. 417.

[43]*Id*. at p. 412.

[44]*Id*. at p. 268.

[45]*Id*. at p. 184.

[46]*Id.* at pp. 187-188.

[47]*Id*. at p. 188.

addition to impingement changes.[48] The overall impression, however, states that there is "no evidence of full thickness cuff tear, musculotendinous retraction, or cuff atrophy; no evidence of high grade internal articular derangement or paracapsular pathology."[49]

      A reasonable mind would accept the evidence as adequate to support the determination that Herbert's subjective complaints of pain are not supported by the medical records. Although the ALJ does not specifically mention Herbert's reported pain contained in the treatment notes and seems to overlook the statements made in the notes concerning Herbert's return to work, Herbert cannot establish any harm from the alleged oversights. As established above, the majority of the treatment notes report Herbert's pain at a mid-moderate level, and the final note prior to the date last insured reports Herbert's pain at a five (5). The notes also report that the pursued treatments alleviated some of Herbert's pain. Further, the ALJ did not misinterpret the x-ray and MRIs. The diagnostic imaging revealed only age-related degeneration and mild to moderate trauma to Herbert's neck and right shoulder.

      What is absent from the medical records is equally - if not more - important than what is available. It is highly probative that Herbert sought no treatment for over two years following her February 14, 2007, appointment with her treating physician, a time during which Herbert maintains she was in immense pain. Although Herbert testified that her treating physician was no longer covered under her husband's mail handlers insurance plan,[50] a reasonable mind would think that an individual in such pain would seek treatment elsewhere. The medical records,

---

[48]*Id.* at pp. 185-186.

[49]*Id*. at p. 186.

[50]*Id*. at pp. 36-37.

however, indicate that Herbert sought no treatment for two years. "An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment."[51]

**Medical opinion evidence.** Herbert maintains that the ALJ erred in assigning "great weight" to the medical opinions of the state agency doctors because the file reviewed by the state agency doctors was incomplete. Missing from the file were four of the treating physician's treatment notes dated from October 25, 2006, to February 14, 2007.[52]

A reasonable mind would accept the evidence as adequate to support the assignment of "great weight" to the opinions of the state agency medical doctors, even in light of the missing evidence. Although four of the treating physician's treatment notes were missing from the file, the file contained other medical evidence from the same treating physician. Specifically, the file contained the September 20, 2006, treatment note from the treating physician.[53] This note delves extensively into the pain reported by Herbert, the impressions of the treating physician and the treatment plan.[54] Herbert reported on that day that her pain level was at a nine to ten (9-10).[55] Also contained in the file reviewed by the state agency doctors was an October 25, 2006, handwritten note from the treating physician in which the physician stated that Herbert received

---

[51]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[52]SSA record at pp. 410-417.

[53]*Id*. at p. 189.

[54]*Id*. at pp. 189-191.

[55]*Id*. at p. 189.

relief from trigger point injections and reported her pain level at a six (6).[56] An October 30, 2006, Pain Management Center Initial Assessment completed by the treating physician's nurse reports that Herbert's pain level is at a seven (7), and at its worst it is at a ten (10).[57] The nurse notes that the lowest pain level Herbert experiences is a five (5).[58] The Assessment also states that Herbert experiences pain radiating from the base of her skull to her right shoulder.[59] The file further contained an October 30, 2006, Procedure Report from the treating physician.[60] This Report describes the pain reported by Herbert, discusses prior treatments and details the medial branch block performed on that day.[61] These documents contain much of the same information as presented in the missing treatment notes: pain levels, subjective complaints of the patient, descriptions of treatments and diagnoses. Also contained in the file were the cervical x-ray and cervical, thoracic and right shoulder MRIs described above.[62]

      Even absent the four treatment notes, there is substantial evidence to support the assignment of "great weight" to the opinions of the state agency doctors. Furthermore, if an error was committed, Herbert cannot establish that any harm resulted because the missing treatment notes show that treatment alleviated some of Herbert's pain, and the majority of the notes place

---

[56]*Id*. at p. 192.

[57]*Id*. at p. 369.

[58]*Id*.

[59]*Id*.

[60]*Id*. at p. 370.

[61]*Id*. at pp. 370-371.

[62]*Id*. at pp. 183-188 & 268.

Herbert's pain level at a mid-moderate level. Indeed, this evidence only bolsters the opinions of the state agency doctors.

**Credibility.** According to Herbert, the ALJ erred in the credibility determination by failing to consider evidence of Herbert's activities for the relevant time period and by failing to consider her explanations for delayed medical treatment.

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[63] To evaluate Herbert's credibility, the ALJ followed the required two-step process and considered the required factors,[64] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Herbert's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

The ALJ considered evidence of Herbert's activities from the relevant time period because she testified to the impact of the pain on her daily activities at the time of the alleged disability[65] and the ALJ references this testimony in the decision.[66] Herbert stated that after the motor vehicle accident she could no longer get items out of the cabinet, pick up her grandchildren, mow the grass or paint the house.[67] The ALJ also references Herbert's Function Report with respect to her daily activities and notes that Herbert organized her bedroom and did

---

[63]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[64]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[65]SSA record at pp. 42-43.

[66]*Id*. at p. 12.

[67]*Id.* at pp. 42-43.

some dusting, occasionally did some cooking and watched television, straightened the house after dinner, and was able to take care of her personal needs.[68] [69]

The objective medical evidence and medical opinions, discussed above, support the ALJ's credibility determination. Again, perhaps the most probative piece of evidence is the fact that Herbert did not seek medical treatment for almost two years following a February 14, 2007, appointment with her treating physician. Herbert argues that the ALJ did not consider her explanations for delayed medical treatment. Discussing continued treatment, however, the ALJ notes in the decision that Herbert "reported financial issues."[70] Herbert states that she could not be seen by her treating physician because the treating physician was no longer on her husband's mail handlers insurance plan. This did not, however, prevent Herbert from seeking medical treatment elsewhere; other health care providers would have been covered under her husband's insurance plan.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Herbert's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

---

[68]*Id.* at p. 14.

[69]Herbert argues that the Function Report should not be considered when reviewing Herbert's daily activities because it was completed in 2010. Thus, the activities described in the Report are not the daily activities Herbert conducted during the relevant time period. This argument is not persuasive. Herbert maintains that she became even further incapacitated in 2010. Therefore, consideration of the activities conducted in 2010 could only support Herbert's application.

[70]SSA record at p. 13.

It is so ordered this 29th day of May, 2014.

_____
United States Magistrate Judge